## The St. Louis, Alton and Terre Haute Railroad Company v. Gustavus Daley, a Minor, who Sues by Lilley E. Daley, his Next Friend.

1. INSTRUCTIONS—*What ,is Required of the Court.*—Where the court gives, without modification, all of the instructions asked by a party, and the instructions on both sides, taken together as one charge, present the law to the jury fairly and clearly, it is all the law requires.

2. SAME—*Not Assuming Facts.*—An instruction which states that if, under the evidence and the instructions of the court, the jury finds defendant guilty, they may take certain facts into consideration in estimating the damages, is not subject to the objection that it assumes the existence of facts not proven.

3. VERDICTS—*Against the Evidence.*—A verdict manifestly against the weight of the evidence will be set aside.

**Memorandum.**—Action for personal injuries. Appeal from the Circuit Court of St. Clair County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1894. Reversed and remanded. Opinion filed June 23, 1894.

TURNER & HOLDER, attorneys for appellant.

J. W. BARTHOLOMEW, W. S. HAY and J. B. HAY, attorneys for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

But one instruction was given to the jury at the request of appellee, and that was upon the question of damages. It is admitted that the rule as to damages was stated with substantial accuracy, but it is said that the instruction "assumed that the defendant was guilty of the wrongful acts complained of," and that "all the jury had to do was to consider the injury, and the pain and suffering, and assess the damage."

We know of no reason why the court should refuse one good instruction because the same party has not requested the giving of one, or two, or a dozen others. In this case the court gave without modification, all of the instructions

St. L., A. & T. H. R. R. Co. v. Daley.

asked by appellant, and the instructions on both sides, taken together as one charge, presented the law to the jury fairly and clearly, and this is all that could be expected or required. Aneals et al. v. The People, 134 Ill. 401; C., C., C. & St. L. Ry. Co. v. Monaghan, 140 Ill. 474.

Nor is appellee's instruction objectionable as assuming that appellant was guilty of the wrongful acts complained of. The jury were told that if, under the evidence and instructions of the court, they should find the defendant guilty, they might take certain facts into consideration in estimating the damages. Here is a clear statement that the guilt of appellant must be predicated upon the evidence.

It was not error, then, to state, at the close of the instruction, that damages might be recovered for any permanent injury sustained, if the jury believed from the evidence that the plaintiff had sustained such permanent injury from the wrongful acts complained of. It is true that another hypothesis might have been harnessed to the instruction; but the addition of the words, "if the jury believe from the evidence that any wrongful acts were done," would not have added elegance to the instruction, and certainly would not have rendered it more intelligible.

We proceed to a consideration of the affirmation that the verdict is against the evidence.

In the city of East St. Louis, the Cahokia wagon road crosses appellant's main track at an acute angle, and runs in a northerly direction parallel with the main track to a point beyond the side-tracks which are located in this vicinity. These side-tracks, or switch-tracks, two of them east and four west of the main track, begin about one hundred feet north of the crossing, and run thence north for some distance, when they join the main track again.

Gustavus Daley, the boy who was hurt, was about nine years old at the time of the accident, which occurred on September 8, 1891. At about half past four in the afternoon he went with the two Belleville boys hereafter mentioned, after a cow. Within half an hour they returned on the Cahokia road from the south to the railroad crossing.

Young Daley swears that when he reached the crossing cars were switched back on him, and that a car struck him, knocked him down and ran over his foot. He heard no bell or whistle. He was looking toward the city and the car came from the south, or the opposite direction. He says that he then walked down to the yard, but how far he does not know, and asked a man to tie up his foot.

The boy was in the hospital for more than nine weeks, and suffered the amputation of his foot, which, according to his mother, was "all smashed" and that "clear up to the ankle joint," at the time when she first saw it, almost immediately after the accident.

Two switchmen, Sweeney and Pierce, and the fireman, Lowry, swear that, at the time under consideration, an engine pulled about twenty cars south on the main track but not so far as to clear the Cahokia crossing; that the rear car, which was then wholly, or at least partly on the crossing, was thrown north on the main track; that the other cars were then pushed back on the side-track, and that the engine was switched to the main track and pushed the single stock car further toward the north. These witnesses swear that they did not see young Daley or the Belleville boys about the crossing, but that on going about 800 feet north of the crossing into the yards, they found the crippled boy in a box car, where he had been laid by Red O'Neil, an employe of the company. Red O'Neil does not testify, the reason for his absence not appearing in the record except by inference, and so the exact spot where the boy was found by him is not shown, though the circumstances indicate quite clearly that it must have been several hundred feet north of the crossing. It seems quite improbable that young Daley should have been hurt at the place and in the manner stated by him. How he could have been knocked down by the car when he was outside of the rails, without further injury than the crushing of his left foot is not clear.

It is also incredible that he should have walked 800 feet with his foot absolutely crushed, as his mother says it was. Under these circumstances, great weight should be given to

the testimony of the Belleville boys, notwithstanding the efforts which were made to discredit them as witnesses. Willie Belleville, who was fourteen years of age at the time of the trial, gives the following account of the accident: " I saw him (Gustavus Daley) jumping on cars and riding; he jumped off and he fell down on the track, and we ran down there and Mr. Pierce and Red O'Neil had him there and he had his foot hurt." He further says, that the car was part of a " whole train of stock cars," and that the boy jumped on the car about the middle of the yards, and was hanging on near the end of the car and standing on something. This account is corroborated in every essential particular by the testimony of Tommy Belleville.

The evidence shows that the accident must have occurred in the yard, where the boy was trying to ride by hanging from the side of a car. If this is the fact, there can be no recovery; and yet we do not feel justified in reversing the judgment without remanding the case, but, upon careful consideration of the whole record, we think that the case should be submitted to another jury, with full opportunity to the parties to investigate the transaction more thoroughly than has been done heretofore to the end that the truth may be made known and absolute justice may be done.

The judgment is reversed and the cause is remanded.